CANDA BROS. v. MICHIGAN MALLEABLE IRON CO.

(Circuit Court of Appeals, Sixth Circuit.   March 21, 1907.)

No. 1,615.

1. PATENTS—JOINT SUIT FOR INFRINGEMENT—PROFITS RECOVERABLE.

In a suit by joint owners of a patent for its infringement, profits cannot be recovered which accrued from infringements prior to the date of the joint ownership, and when the patent was the sole property of one of the complainants.

2. SAME—ACCOUNTING FOR PROFITS—DEDUCTION FOR LOSSES.

On an accounting for profits for infringement of a patent, the infringer is not entitled to deduct from the profits made during a certain period of time a loss subsequently incurred in a separate transaction.   On such an accounting only losses occurring concurrently with the making of profits and directly resulting from the particular transactions on which the profits are allowed may be considered in diminution of profits.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 576.]

3. SAME.

Where infringement of one claim only of a patent is adjudged, the infringer cannot be held to account for profits arising from the sale of a part of the device which was not an element of such claim, although it may have been an element of other claims.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 572.]

4. SAME—SEPARATION OF PROFITS.

It is the settled rule that, where the infringed device was a portion only of defendant's machine, which embraced inventions covered by other patents, it is incumbent on complainant to show how much of the profit made was due to such other patented parts, and how much to those of his own invention; but, before such rule is applicable, the burden rests upon the defendant to show the existence of such extraneous elements and the probability that they affected the price of the machine, and this is not done by showing that elements of the combination of complainant's patent and of the infringing machine were also elements of prior patented combinations where they were not separately patented, and were therefore open to use by complainant as parts of his own combination and invention.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

James C. Chapin, for Canda Bros.
James Whittemore, for Michigan Malleable Iron Co.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge.   This cause was here in 1903 on appeal from a decree of the Circuit Court dismissing the bill.   The suit was for the infringement of a patent granted to Canda, September 29, 1891, for the invention of a draw-bar attachment for connecting railroad cars.   The number of the patent was 460,426.   Being of opinion that the first claim of the patent was valid, and finding that the defendant infringed it, we reversed the decree, and directed the Circuit Court to enter a decree in favor of the complainants in respect of said first claim, and thereupon to proceed to ascertain the profits and damages and to grant the usual relief.   The case is reported in 124 Fed. 486, 61 C. C. A. 194.   On entering the proper decree in the court below, a reference to a master was ordered to take proof and state an account

of the profits and damages, and report the same to the court. On coming before the master, the complainants renounced their claim for damages, and the parties went into proof in respect to the profits. It was shown that on October 3, 1899, Ferdinand E. Canda, the patentee, assigned a one-half interest in his patent to the co-complainant, Charles J. Canda, and it came to be owned by them as a partnership. The complainants offered proof to show infringement and damages occurring before the assignment as well as subsequent thereto. Objection was made by the defendant to the proof concerning the period before the assignment. The master in his report divided the whole period of infringement covered by the evidence into three parts: First, that before the assignment; second, that directly following and continuing until the end of the time during which sales were made and profits realized; and, third, a subsequent space of time during which the defendants manufactured casing for a customer who never paid for them, and from whom the debt is uncollectible. For the first period the master found the profits to be $6,905.41, for the second $11,659.50, and the losses from the manufacture in the third to be $6,634.56. The master reported against the allowance of a recovery for the profits accruing during the first period, and in favor of their allowance for the second period; and he also reported in favor of a contention for the defendant that the losses of the third period should be deducted from the profits allowed for the second period. The result was a balance in favor of the complainant of $5,024.94. Exceptions to the report were filed by each party. So far as some of these are material, they will be mentioned later on; but for our immediate purposes it should be stated that the court sustained the complainants' exception to the master's disallowance of the profits for the first period, but overruled the complainant's exception to the master's deduction of the losses of the third period. Having also overruled exceptions to the allowance of the profits for the second period, the court rendered a decree upon this adjustment in favor of the complainant for the sum of $11,930.35. Both parties have appealed.

1. The first question in its order to be considered is whether the complainants were entitled to recover the profits made during the period of infringement while Frederick J. Canda was the sole owner of the patent. The master was of opinion that they could not be recovered in this suit because the other complainant had no interest in them; but the court held otherwise, and allowed them, and we think that in this the court was in error. The general rule is that all the parties suing must have an interest in the recovery in order to warrant a judgment therefor in their favor. Even if that were permissible, the bill did not seek to recover a several decree in favor of one of the complainants for one part of the profits, and a joint decree for another. On the contrary, the complaint was of infringement after the date of the assignment. In support of the ruling of the court in this particular, the learned judge cited Moore v. Marsh, 7 Wall. 515, 19 L. Ed. 37; but that case is not in point for the complainants. The patentee, some time after getting his patent, assigned a one-half interest therein to another party. Subsequently the patentee brought a suit to recover damages for infringement committed before the assignment.

The defendant pleaded the assignment, and insisted that, as at the bringing of the suit another party had become interested in the patent, such other party should have been joined as plaintiff. But the Supreme Court held otherwise, and Mr. Justice Clifford, at page 522 of 7 Wall. (19 L. Ed. 37), said:

"It is clear that unless the plaintiff can maintain the action there can be no redress, as it is too plain for argument that a subsequent assignee or grantee can neither maintain an action in his own name, or be joined with the patentee in maintaining it for any infringement committed before he became interested in the patent. Undoubtedly the assignee thereafter stands in the place of the patentee, both as to right under the patent and future responsibility; but it is a great mistake to suppose that the assignment of a patent carries with it a transfer of the right to damages for an infringement committed before such assignment."

In the case of Adams v. Bellaire Stamping Co. (C. C.) 25 Fed. 270, cited by counsel for complainants, the suit was brought by a single plaintiff, who was assignee of the patentee, and was also assignee of the damages for prior infringements. The question was whether he could recover for prior and for subsequent infringements and Judge Sage held that he could. This was because he was the assignee of the patentee's damages. The court below erred in including the profits for this period in the recovery, and the decree must be corrected accordingly.

2. The court below also erred in sustaining the defendant's claim of a deduction for the losses incurred by said defendant during the third period of the reckoning, and in deducting those losses from the profits which the complainants were otherwise entitled to recover. In the opinion of the court, the cases of the Cawood Patent, 94 U. S. 710, 24 L. Ed. 238, and Rubber Company v. Goodyear, 9 Wall. 788, 19 L. Ed. 566, are cited as authority for the ruling; but these cases only hold that losses occurring concurrently with the gaining of profits may be taken into account—that is to say, if they are losses directly resulting from the particular transaction on which the profits are allowed. Though called losses, they are really diminutions which are taken into account in reaching the resultant profits of the sales on which profits were made. The general statements made by the justices who delivered the opinions in the cases last cited, and which are here relied on as authority for the claim that all the transactions running through several years are to be looked to, and the profits and losses of a continuous business are to be balanced for a result, do not sustain such a contention. The meaning and authority of such general statements should be limited by the facts of the case in which they were expressed. And it is necessary to impose such limitations in order to make the statements consistent with the law as since declared by the same court. Callaghan v. Myers, 128 U. S. 617, 664, 9 Sup. Ct. 177, 32 L. Ed. 547; Crosby Valve Co. v. Safety Valve Co., 141 U. S. 453, 12 Sup. Ct. 49, 35 L. Ed. 809; Walker on Patents (4th Ed.) § 713.

3. It appears that the proofs before the master included the profits on the bottom plate of the casing, and the report of the master included them. To this the defendant filed an exception, which was overruled by the court. The second claim of the patent included the bottom plate in the combination. The first did not. By reference to our former

opinion, it is shown that we sustained the first claim; but, as to the second, we affirmed the decree of the Circuit Court dismissing the bill upon the ground solely that infringement was not proven.   We did not pass upon the validity of the second claim.   The decree entered below in conformity with our mandate directed that the accounting should be for the infringement of said first claim.   The contention of the complainant that the profits on the bottom plate should be included rests upon the ground that the making and selling of it was a contributory infringement of the first claim.   Assuming it to be so, it does not follow that the defendant should be charged with the profits on the manufacture and sale of it.   The infringement was of the invention of the principal member of the entire casing, and only of that member.   It might well be that the supplying of the bottom plate would be contributory to the infringement and render the contributor liable for the trespass of the principal infringer.   But infringement by the latter, if not of the whole thing, is only of some part, and it is the infringing of that part which the contributor helps the principal to do.   As we pointed out in our former opinion, patentable invention may be of some member of a combination or thing which, when associated with other elements, either such as are known to the art or such as are suggested but not claimed by the inventor, is new and useful.   But that gives him no proprietary interest in the things thus associated.   So here, Canda having invented certain new and useful parts of a draw-bar casing, though he might have omitted to mention any bottom plate, if the state of the art would indicate to the builder that a bottom plate should be added, did nevertheless specify that a bottom plate would be needed, and proceeded further to describe a good form for one.   The result reached by the court below upon this part of the accounting confounds claims 1 and 2, and extends the recovery to all the elements of the second claim.   This we think was erroneous; but, as the master took care to distinguish that part of the profits which accrued on account of the bottom plate, the decree may and should be modified by deducting that part, which the master reports as amounting to $1,532.

4. Another exception of the defendant rests upon the facts that certain earlier patents, two in particular, one to Cushing and another to Thornburgh, had been taken out for "draw-bar stops for railroad cars" and "draft apparatus" for the same, which the defendant says indicate certain features of construction which are embodied in the infringing castings made and sold by the defendant, and which augment the profits wherewith the defendant is charged.   The principle upon which this exception is grounded is well settled; but, before it can be applied, it is incumbent on the defendant to prove that the peculiar characteristic features or some substantial part of such peculiarities of the former patents were embodied in the patented articles sold, and that they were of such a character that they probably contributed to the profits.   Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000.   On this being shown, the burden of proof is devolved on the party seeking to recover the profits to prove what part of the entire profits are due to the use of his own invention.   He must make the separation of values and show to the court how much is his rightful

proportion. Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371.

Here is the rock on which many patent causes have been stranded at the end of their course, for, though it can sometimes be done, it is generally next to impossible to distinguish the profit due to one rather than another of the characteristics of the article sold, or manufactured to be sold. The price is single, and it would rarely happen that either the buyer or the seller would contemplate the price as made up of components grounded on such a distinction. The facts are similar to those which in other cases would condemn the guilty party to suffer the consequences of his mingling indistinguishably the property of an innocent party with his own or that of another. Counsel for defendant has argued this question upon the theory that the rule laid down in the case of Elizabeth v. Pavement Co. was an exception merely to that stated in Garretson v. Clark, and seems to suppose that, in every case where some element or elements of a combination found in a former patent is found also in the infringing article, the burden is cast upon the plaintiff to prove either that it did not affect the selling price of the article, or, if it did, to show what part of the price was due to his own invention. But such a rule would be inconsistent with the decision in Elizabeth v. Pavement Co. We think the two cases above mentioned are not inconsistent, and that they are easily reconciled upon the assumption that the rule of the first case is applicable to the question of the burden of proof of showing the presence of the extraneous element and the probability that it has affected the price, and that the rule in the second case relates to the burden of proof after those facts are established. Thus, in the later case of Keystone Mfg. Co. v. Adams, 151 U. S. 145, 148, 14 Sup. Ct. 295, 38 L. Ed. 103, in summing up the conclusions reached thereon, one was stated to be "that where the infringed device was a portion only of defendant's machine, which embraced inventions covered by patents other than that for the infringement of which the suit was brought, in the absence of proof to show how much of that profit was due to such other patents, and how much was a manufacturer's profit, the complainant is entitled to nominal damages only," from which it seems that the conditions stated must have been made to appear before the rule stated could be applied.

Where the extraneous matter is another invention which is the subject of a monopoly in some other person, the reasons for the rule requiring a distinguishing of profits becomes clearer because of the necessity of preventing a double liability on the part of the defendant; but the reasons for its application to any other case are vague, and the practice difficult. In the present cause the court below held that it was not proven that the inventions of the Cushing and Thornburgh patents, or either of them, were embodied in the casings on which the profits were calculated, or contributed thereto, and in this we entirely agree. An examination of the testimony in the record shows that some of the forms of parts of the combinations of those patents are to be found in the Canda patent, but nothing which represents any patented device of Cushing or of Thornburgh. Nor do we find any substantial thing deserving of being reckoned as a factor to which a portion of the price was due. It was settled as between these parties by the former decree

that there was nothing in the prior art which anticipated the invention of the patent in suit, and that conclusion cannot now be disputed. The unpatented elements of the Cushing and Thornburgh patents (and they were all singly unpatented) were common property. Any other inventor might take them, if he did not take an entire combination, and use them as parts of his own structure, and, if they were a fit embodiment of his own ideas, they, in his combination, represented parts of his invention, and the invention pervaded the whole structure. We therefore conclude that there was no error in disallowing this exception.

There are no other questions of sufficient importance to require discussion. There is a question of costs, but they were in the discretion of the court, and not the subject of appeal.

The decree of the Circuit Court will be reversed, and the cause remanded, with instructions to modify it in accordance with this opinion, and, as thus modified, re-enter it as the final decree of the court.